+UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATASHA DAVIS,

              Plaintiff,                        Case No. 2:18-CV-10228
                                              District Judge Marianne O. Battani

v.                                            Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DE 13) and AFFIRM THE
COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13),

and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

      Plaintiff, Natasha Davis, brings this action under 42 U.S.C. §§ 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 11), the

Commissioner's cross-motion for summary judgment (DE 13), and the

administrative record (DE 7).

### A.    Background and Administrative History

Plaintiff filed her application for SSI benefits on December 4, 2015, alleging

that she had been disabled since February 27, 2015.  (R. at 171-77.)  In her

disability report, she lists several conditions (spinal arthritis, scoliosis, lupus,

arthritis of the right ankle and foot and knee, arthritis in the neck, and arthritis in

the right shoulder and hand) that limit her ability to work.  (R. at 209.)  Her

application was denied on February 24, 2016.  (R. at 72, 103-19.)

On March 18, 2016, Plaintiff requested a hearing by an Administrative Law

Judge ("ALJ").  (R. at 120.)  On December 16, 2016, ALJ Dennis M. Matulewicz

held a hearing, at which Plaintiff and a vocational expert (VE), Diane Regan,

testified.  (R. at 45-71.)  ALJ Matulewicz issued an opinion on February 8, 2017,

which determined that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 28-44.)

On March 1, 2017, Plaintiff submitted a request for review of the ALJ's

decision/order.  (R. at 164-66.)  However, on January 10, 2018, the Appeals

Council denied Plaintiff's request for review.  (R. at 1-7.)  Thus, ALJ Matulewicz's

decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on January 19, 2018.

**B.    Plaintiff's Medical History**

The administrative record contains approximately 470 pages of medical

records that were available to ALJ Matulewicz at the time of his February 8, 2017

decision.  (R. at 266-744 [Exhibits 1F – 12F].)  These materials will be discussed

in detail, as necessary, below.

**C.    The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since December 4, 2015, the application date.  (R. at

33.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

migraine headaches; degenerative disc disease; scoliosis; systemic lupus

erythematosus; asthma; obesity; arthritis; and, depression.  (*Id.*)  At **Step 3**, the

ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id.* at 33-34.)  **Between Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined

that Plaintiff had the RFC to:

_____

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.

3

perform sedentary work as defined in 20 CFR 404.1567(a) with the following exceptions: she can lift 10 pounds maximally, 5 pounds frequently, and 10 pounds occasionally; she can sit 6 hours out of an 8-hour [work shift]; she can stand and/or walk 2 hours out of au 8-hour work shift; she requires a sit/stand option at will every 20 minutes [*i.e., exertional limitations*]; she should never use ladders, scaffolds, or ropes; she can only occasionally stoop, crouch, kneel, crawl, balance, and use ramps or stairs [*i.e., postural limitations*]; she should avoid walking on uneven surfaces; she should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibrations, fumes, odors, dust, gases, and poor ventilation [*i.e., environmental limitations*]; she can occasionally reach to do over-the-shoulder work with the right or left upper extremity; she can frequently, but not constantly, handle, finger, and feel with the right or left upper extremity [*i.e., manipulative limitations*]; she should never work with hazards including dangerous unprotected machinery or work at unprotected heights [*i.e., environmental limitations*]; she can only occasionally bend, twist, and turn at the waist or neck [*i.e., postural limitations*]; she can only occasionally push or pull with the right or left upper extremity [*i.e., exertional limitations*]; she is limited to simple unskilled work with an SVP rating of 1 or 2; she is limited to work that has only occasional contact or discussion with co-workers; she is limited to routine work that does not require changes or adaptations in work settings or duties more than once per month; she is limited to work that requires only occasional contact with the general public; and she is limited to jobs without production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on her productivity [*i.e., mental limitations*].

(*Id.* at 34-35.)  At **Step 4**, the ALJ determined that Plaintiff is unable to perform

any past relevant work.  (*Id.* at 38.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there are jobs that

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

exist in significant numbers in the national economy that Plaintiff can perform. (*Id*. at 39-40.)  The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 4, 2015, the date the application was filed.  (*Id*. at 40.)

### D.      Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff identifies three claims of error: (1) whether the ALJ should have obtained an updated opinion by a medical advisor or an updated consultant examination pursuant to Social Security Ruling (SSR) 96-6p; (2) whether the ALJ's RFC assessment is supported by substantial evidence; and (3) whether the

6

ALJ should remand this case to obtain a psychological or psychiatric consultative evaluation.  (DE 11 at 5, 11-16.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision because: (1) the ALJ considered all of the evidence in the record and was not required to obtain an updated medical opinion; (2) substantial evidence supports the ALJ's RFC; and (3) remand is not required because Plaintiff never alleged any mental impairment in her application and the ALJ adequately considered the record evidence and adequately accounted for Plaintiff's mental impairment in the RFC assessment.  (DE 13 at 7-21.)  I will address each argument in turn.

### 1.    The ALJ was not required to obtain an updated medical opinion pursuant to SSR 96-6p

Plaintiff argues that the ALJ erred by not obtaining an updated medical advisor opinion or consultative examination pursuant to SSR 96-6p because new medical evidence was added to the record after the State agency medical consultant, Dr. Timothy Honigman, reviewed Plaintiff's physical impairments on February 20, 2016.  (DE 11 at 11-13.)  She notes that the ALJ afforded the State agency consultant's assessment that Plaintiff was capable of performing a reduced range of light work "little weight" because "the updated record documents the presence of additional severe impairments that justify restricting [Plaintiff] to an even further reduced range of sedentary work."  (*Id.*, citing R. at 38.)  Plaintiff contends that the ALJ "should obtain an updated medical opinion" pursuant to SSR

96-6p "where additional medical evidence is received that could modify the State agency medical consultant's finding that the impairment(s) was not equivalent in severity to any impairment in the Listing of Impairments."  (DE 11 at 12.)

SSR 96-6p, upon which Plaintiff relies, sets forth the process by which ALJs are to make Step 3 determinations, and provides, in relevant part, that:

> [A]n [ALJ] and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> - When no additional medical evidence is received, but *in the opinion of the [ALJ]* or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> - When additional medical evidence is received that *in the opinion of the [ALJ]* or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996) (emphases added).  That provision gives the Commissioner inherent discretion to determine whether an updated opinion is necessary.  *See Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 723 (6th Cir. 2012) ("SSR 96-6p thus 'requires that the ALJ obtain an *updated* medical opinion *only when the ALJ believes* that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment'") (emphasis added) (citation omitted).  According to *Courter*, Plaintiff was required to show either: (1) that the newer evidence satisfies a Listing; or (2)

8

that the ALJ himself believed that the newer evidence may have changed the State agency consultant's findings.  *Id.*

Plaintiff bears the burden of proof at Step 3 to establish that her impairments meet or medically equal a listed impairment.  *See Harvey v. Comm'r of Soc. Sec.*, No. 14-cv-10614, 2014 WL 5465531, at *4 (E.D. Mich. Oct. 28, 2014).  First, as the ALJ recognized, Plaintiff's "representative has conceded that none of the [severe impairments] meets the criteria of any listed impairment."  (R. at 33, citing R. at 258; *see also* R. at 50.)  Plaintiff has not challenged this finding, nor could she, in light of her statement that "they don't individually meet a listing…." (R. at 50.)  While Plaintiff claims generally that some "new medical evidence added to the record" was not available to Dr. Honigman at the time of his February 2016 opinion, she only broadly refers to over 400 pages of record evidence containing records mostly pre-dating, but also some post-dating, Dr. Honigman's February 2016 evaluation,[2] but without explaining *how* these 400 pages of documents may change Dr. Honigman's findings regarding equivalence.  *See Freeman v. Comm'r of Soc. Sec.*, No. 14-cv-11146, 2015 WL 404332, at *11 (E.D. Mich. Jan. 29, 2015) (Plaintiff must identify "evidence that would support a finding that Plaintiff meets

---

[2] *See* DE 11 at 11 (citing R. at 289-302 (Exhibit 3F, records dated 5/8/15 to 1/4/16), 303-385 (Exhibit 4F, records dated 11/20/14 to 1/4/16), 386-462 (Exhibit 5F, records dated 11/21/14 to 1/4/16), 510-615 (Exhibits 8F & 9F, records dated 5/8/15 to 7/28/16), 616-684 (Exhibits 10F & 11F, records dated 12/26/14 to 8/26/16) and 685-744 (Exhibit 12F, records dated 1/29/16 to 9/12/16)).

or equals a listing").  The Court has no obligation to, and will not, pour through this lengthy medical record in search of evidence which the Plaintiff does not otherwise supply or identify.  *See Davis v. Comm'r of Soc. Sec.*, No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("Having already concluded that the treating physician's…opinions were properly discounted, the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

The one record Plaintiff does specifically identify as being unavailable to Dr. Honigman—the January 2016 MRI ordered by Dr. Peter Bono—was in fact *available to* and *expressly relied upon* by Dr. Honigman in his February 2016 evaluation.  (*See* DE 11 at 11; R. at 77-80.)  Specifically, Dr. Honigman referred to that January 2016 MRI *twice* in his medical opinion and noted that the MRI revealed "[m]ild degenerative disc disease and facet arthropathy at L3-4 and L4-5 with moderate left neural foraminal narrowing at L4-5 contacting the exiting left L4 nerve root." (R. at 77 (findings of fact), 80 (RFC explanation).)  Dr. Honigman

thus found that "spine disorders" were a severe impairment and assessed an RFC for a reduced range of light work.  (R. at 77-80.)

Plaintiff does not argue that the ALJ did not consider the "new medical evidence," and the ALJ's written decision clearly indicates that he did.  (R. at 36-38.)  Accordingly, it is implicit in the ALJ's decision that he did *not believe* that the "new medical evidence" "may change" Dr. Honigman's analysis of Plaintiff's impairments, SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996); likewise, it did not change the ALJ's analysis, and he had no duty to obtain an updated medical opinion.  As the Sixth Circuit has recognized:

> There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issues.  *Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand*.  In this case, the evidence submitted after the state agency assessment does not fatally undermine the accuracy of that assessment.

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (quoting with approval a magistrate judge's report and recommendation).  Plaintiff has failed make a "clear showing" of how any "new medical evidence" "may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments" and thus make the ALJ's opinion "untenable," and therefore her first claim of error should be denied.  *See McClain v. Comm'r of Soc. Sec.*, No. 2:16-cv-13950, 2018

WL 1309877, at 3 (E.D. Mich. Jan. 29, 2018) ("Plaintiff having failed to show how 'the voluminous new medical evidence,' which was added to the record since the second psychological CE report, necessitated either calling a medical advisor to the hearing or subjecting Plaintiff to a third CE, the ALJ's Step 3 decision should be affirmed."), *report and recommendation adopted*, 2018 WL 1291126 (E.D. Mich. Mar. 13, 2018); *Grubbs v. Comm'r of Soc. Sec.*, No. 2:16-cv-10426, 2017 WL 1214426, at *10-11 (E.D. Mich. Feb. 17, 2017) (although plaintiff contends "many of the conditions which the ALJ found to be severe at Step 2 'were not even referenced in the records reviewed by'" the state agency doctors, the argument "is otherwise undeveloped" and "it is unclear to this Court how, if at all, Plaintiff is challenging the ALJ's Step 3 determination[.]"), *report and recommendation adopted*, 2017 WL 1148918 (E.D. Mich. Mar. 28, 2017).

### 2. The ALJ's RFC's determination is supported by substantial evidence

Plaintiff claims that the ALJ's RFC assessment is not supported by substantial evidence because "the ALJ did not rely on any physician's opinion in formulating his RFC" and, therefore, this case must be remanded "for a proper formulation of an RFC based on physicians' opinions concerning RFC[.]" (DE 11 at 13-14.) Plaintiff contends that the "only two physicians in the entire record that make opinions concerning the RFC are the State Agency medical consultant and Dr. Trate[, to] whose opinions the ALJ gives little weight[.]" (*Id.* at 14.) The

Commissioner responds that the ALJ's RFC assessment is supported by substantial evidence. (DE 13 at 12-16.)[3]

It must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (["D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (internal citations omitted); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity"). The Commissioner has the burden of proof only at "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391-92.

---

[3] The ALJ recognized that Plaintiff previously filed an application for SSI benefits on January 3, 2012, which was denied by the ALJ on September 17, 2013, but then found that he is not bound to that prior decision under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) because there is new and material evidence justifying a change in Plaintiff's RFC. (R. at 31, 35.) The Sixth Circuit recently modified the *Drummond* holding in *Early v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which holds that principles of *res judicata* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. Having determined that he was not bound by any prior decision, the ALJ here gave the evidence in the record a "fresh look," thus satisfying *Early*. *See Kimball v. Comm'r of Soc. Sec.*, No. 17-12659, 2018 WL 4102845, at *5 n.4 (E.D. Mich. Aug. 7, 2018) (finding *Early* did not change the Court's analysis of pre-*Early* ALJ decision because the ALJ had concluded she was not bound by the previous RFC due to new and material evidence), *report and recommendation adopted*, 2018 WL 4095081 (E.D. Mich. Aug. 28, 2018).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from [her] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (citation omitted). Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC

14

determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (citations omitted).

The ALJ here thoroughly reviewed and considered Plaintiff's hearing testimony, her function report, her daily activities, the objective medical evidence, her treatment history, and the opinion evidence, and found that Plaintiff was capable of performing a reduced range of sedentary exertional work.  (R. at 34-38.) Plaintiff's only claim of error with regard to the ALJ's RFC determination is that it is not supported by substantial evidence because the ALJ discounted the opinions of the State agency physician and Plaintiff's treating physician, Dr. Toni Trate, and thus "did not rely on any physician's opinion in formulating his RFC."  (DE 11 at 13-14.)  Plaintiff claims that an RFC is a "medical assessment," citing SSR 83-10 and a Sixth Circuit case from 1963, *Hall v. Celebrezze*, 314 F.2d 686, 689 (6th Cir. 1963).  (DE 11 at 13.)  However, while "[t]hat was true [then], it is not, strictly speaking, true today" because:

> As the court in *Langley v. Astrue* explained, SSR 83-10 adopted the contemporaneous version of 20 C.F.R. § 404.1545 defining the RFC as a medical assessment.  777 F. Supp.2d 1250, 1252 (N.D. Ala. 2011). In 1991, the Commissioner struck this line from that regulation, which was the only place it appeared.  *Id.*  Instead, 20 C.F.R. § 404.1527 now states that issues reserved to the Commissioner, such as the RFC, "are not medical opinions."  Moreover, the court noted, SSRs are not binding and any deference courts give them disappears when they contradict a regulation.  *Langley*, 777 F.Supp.2d at 1253.

15

*Spuhler v. Colvin*, No. 2:13-cv-12272, 2014 WL 4855743, at *18 (E.D. Mich. June 17, 2014), *report and recommendation adopted*, 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014). As explained above, the determination of Plaintiff's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as … your [RFC] … the final responsibility for deciding these issues is reserved to the Commissioner.").

Plaintiff's argument that the ALJ erred because he "did not rely on any physician's opinion in formulating his RFC" has been squarely rejected by the Sixth Circuit. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's RFC lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence")). Those courts explain that "[a]n RFC is an 'administrative finding,' and the final responsibility

16

for determining an individual's RFC is reserved to the Commissioner." *Shepard*, 705 F. App'x at 442. "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). "[T]o require the ALJ to base her RFC on a physician's opinion would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 F. App'x at 728; *see also Colbert v. Comm'r of Soc. Sec.*, No. 2:15-cv-13467, 2017 WL 1214187, at *7 (E.D. Mich. Feb. 10, 2017) (rejecting plaintiff's argument that the ALJ's RFC is improper because the record is "'devoid' of the opinions of any physicians" upon which to base the RFC because the ALJ properly examined the record evidence and determined plaintiff's capacity), *report and recommendation adopted*, 2017 WL 1018149 (E.D. Mich. Mar. 16, 2017); *Spuhler*, 2014 WL 4856153 at *4 ("[T]he ALJ was justified in examining all of the evidence and determining Spuhler's capacity, notwithstanding the absence of a conclusive medical opinion.")

Thus, the ALJ was not required to conform his RFC assessment to a particular medical opinion. Rather, a review of the ALJ's decision demonstrates that he sufficiently "'articulate[d] how the evidence in the record supports the RFC determination, discuss[ed] the claimant's ability to perform sustained work-related

17

activities, and explain[ed] the resolution of any inconsistencies in the record.'" *See Delgado*, 30 F. App'x at 547.   As the Commissioner properly points out, Plaintiff fails to suggest what additional limitations the ALJ should have included in the RFC assessment, or identify any evidence that would compel greater limitations. Plaintiff's second claim of error therefore should be denied.

### 3. The ALJ was not required to obtain a psychiatric or psychological consultative examination

Plaintiff contends that this matter should be remanded to obtain a psychological or psychiatric consultative examination pursuant to 20 C.F.R. § 404.1503(e), which requires the State agency to have a psychologist or psychiatrist review a file when there is evidence of the existence of a mental impairment in the record.  (DE 11 at 14-16.)  Plaintiff states that the ALJ acknowledged that Plaintiff sought treatment with Dr. Trate for complaints of depression, assessed her with mental limitations, and then imposed mental limitations in the RFC determination. (*Id.* at 15-16, citing R. at 34-35.)  Plaintiff further contends that the ALJ's RFC assessment is "conclusory" because "[t]here is no RFC from any psychiatrist or psychologist in the record for the ALJ to have relied upon in drawing RFC conclusions," and that he fails to discuss her mental limitations "in terms of work-related functions." (*Id.*)

First, 20 C.F.R. § 1503(e) provides, in relevant part:

> An initial determination by a State agency or the Social Security
> Administration that you are not disabled (or a Social Security
> Administration review of a State agency's initial determination), in any
> case where there is evidence which indicates the existence of a mental
> impairment, will be made only after every reasonable effort has been
> made to ensure that a qualified psychiatrist or psychologist has
> completed the medical portion of the case review and any applicable
> residual functional capacity assessment.

20 C.F.R. § 404.1503(e). Courts have consistently held that this regulation, on its face, applies *only* to *initial determinations* finding mental impairments, requiring a psychiatrist or psychologist to review the record before the Commissioner can make the *initial decision* on a benefits claim. *See, e.g., Hudson v. Comm'r of Soc. Sec.*, No. 16-10032, 2017 WL 1030216, at *7 (E.D. Mich. Feb. 22, 2017) (404.1503(e) applies only to initial determinations finding mental impairments), *report and recommendation adopted*, 2017 WL 1021072 (E.D. Mich. Mar. 16, 2017). That regulation is "unrelated to consultative examinations *after* that decision and *before* the hearing." *See Hudson*, 2017 WL 1030216, at *7 (emphases added, citing *Spuhler*, 2014 WL 4855743, at *18). Here, Plaintiff did not allege any mental impairment when she applied for SSI benefits (R. at 209), and she did not mention depression, or any other mental impairment, when she completed her function report, both in December 2015. (R. at 218.) Further, Plaintiff never referred to depression or any mental impairment in her March 2016 disability report on appeal. (R. at 230-38.) Thus, "[n]othing in [P]laintiff's application would have suggested the need for a review by a psychiatrist or

psychologist," and any references to depression in her treatment notes, without more, was not enough to compel review by a psychiatrist or psychologist pursuant to 20 C.F.R. § 404.1503(e). *Hudson*, 2017 WL 1030216, at *7 (review by a psychiatrist or psychologist pursuant to § 404.1503 is not compelled by "scant medical records evidencing plaintiff's depression, and only minimal evidence of treatment").[4]  Accordingly, 20 C.F.R. 404.1503(e) did not require the ALJ to obtain a consultative mental status examination here.  *See id.*; *see also Baxter v. Comm'r of Soc. Sec.*, No. 1:17-cv-11960, 2018 WL 4474677, at*4 (E.D. Mich. July 24, 2018), *report and recommendation adopted*, 2018 WL 4468324 (E.D. Mich. Sept. 18, 2018).

Moreover, looking past Plaintiff's incorrect reliance on 20 C.F.R. § 404.1503(e), and construing Plaintiff's argument as simply asserting that the ALJ should have had a psychiatrist or psychologist examine her, a remand would still not be required.  The Commissioner can ask a claimant to attend a consultative examination, generally when the claimant's sources have not provided information

---

[4] Several of the legal arguments made in Plaintiff's motion have been previously rejected by this Court in other cases brought by the same counsel, leading the Court to question whether they are made in good faith and whether the same arguments are just being recycled without respect to this Court's prior unfavorable rulings.  *See, e.g., Spuhler*, *supra.* and *infra*. (Morris, M.J., adopted by Murphy, J.), *Grubbs, supra.* (Patti, M.J., adopted by Cohn, J.), *McClaine, supra*. (Patti, M.J., adopted by Cox, J.), *Hudson, supra*. (Davis, M.J., adopted by O'Meara, J.), *Colbert*, *supra* (Patti, M.J., adopted by Edmunds, J.).

or are "unable to provide certain tests or procedures…." 20 C.F.R. §

404.912(b)(2). However, "the regulations 'do[] not *require* a consultative

examination at government expense unless the record establishes that such an

examination is *necessary* to enable the [ALJ] to make the disability decision.'"

*Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir.1986)

(quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)); *Moon v. Sullivan*,

923 F.2d 1175, 1183 (6th Cir. 1990). "It follows then that the ALJ does not need

to request the examination if he believes the record contains sufficient evidence to

make RFC determinations." *Spuhler*, 2014 WL 4855743, at *17 (citation omitted)

(noting that "[c]ourts apply the abuse-of-discretion standard to review this

decision.").

Here, Plaintiff, who was represented by counsel, did not seek a mental health

examination at any point prior to or after the hearing, or otherwise give any

indication that more evidence was needed before the hearing. As the

Commissioner points out, where Plaintiff was represented by counsel, the ALJ was

entitled to "rely on counsel to present [Plaintiff's] case and to develop her claims."

*Woelk v. Comm'r of Soc. Sec.*, No. 13-12411, 2014 WL 2931411, at *2 (E.D.

Mich. June 30, 2014); *see also Spuhler*, 2014 WL 4855743, at *18 ("[T]he

regulations do not transform [the ALJ] into the claimant's solicitous companion.").

At the administrative hearing, Plaintiff identified the "problems" that she has as

"[c]onstant joint pain, hand weakness, shoulder weakness, [and] wrist weakness[,]" and admitted that she is not seeing a psychiatrist or therapist. (R. at 57.)  When the ALJ asked if her medical condition was worse since her alleged onset date because of depression, Plaintiff responded, "No, sir," and testified that her "bad days" were "mainly physical."  (R. at 58.)  A review of the record evidence reveals that there are no mental health records, and although the ALJ acknowledged that depression is mentioned sporadically in her treatment records, those records generally reflect mental health findings that Plaintiff was alert and oriented, her cognitive functioning was intact, and she was cooperative with the exam.  (R. at 37-38, 287, 311, 314, 317, 324, 328, 331, 390, 395, 617, 622, 626, 639.)  Further, there are no work-related mental health limitations in the record.  However, relying in part on Plaintiff's testimony and her function report, the ALJ liberally found that Plaintiff had moderate limitations in concentrating, persisting or maintaining pace, but no limitations in understanding, remembering or applying information, interacting with others, or adapting or managing herself.  (R. at 34, citing R. at 219-24.)  The RFC accommodated these functional areas by limiting Plaintiff to: "simple unskilled work with an SVP rating of 1 or 2;" "only occasional contact or discussion with co-workers;" "routine work that does not require changes or adaptions in work settings or duties more than once per month;" "work that requires only occasional contact with the general public;" and, "jobs without

production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on her productivity." (R. at 35.) The ALJ thus considered Plaintiff's depression, and crafted an RFC more favorable to Plaintiff than the evidence required. (R. at 34-38.) And the length and level of detail in the RFC finding suggests a very careful review, which was sensitive to the record, such as it is. The vocational expert nevertheless found that there were jobs in significant numbers that Plaintiff could perform, despite these detailed limitations, and Plaintiff has not challenged that finding on appeal. Plaintiff has failed to suggest any additional functional limitations the ALJ should have included in the RFC. Furthermore, to the extent Plaintiff claims the ALJ was required to base the mental RFC on a medical opinion, that argument fails for the same reasons set forth in E.2. above. Accordingly, Plaintiff's third claim of error should be denied.

**F.   Conclusion**

The ALJ's decision was supported by substantial evidence, and no legal error which would lead to a different result has been shown. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the Commissioner of Social Security's decision.

**III.   PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

24

Dated:  February 19, 2019          s/*Anthony P. Patti*
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 19, 2019, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti